UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SKYLER GEARHEART<br>418 West Mansfield Street<br>Bucyrus, Ohio 44820<br><br>Plaintiff,<br><br>v.<br><br>ADVANCED FIBER LLC<br>495 South High Street, Suite 50<br>Columbus, Ohio 43215<br><br>**Serve Also:**<br>ADVANCED FIBER LLC<br>c/o Shelley A. McBride, Statutory Agent<br>495 South High Street, Suite 50<br>Columbus, Ohio 43215<br><br>And<br><br>DON CONKEL<br>6180 Tracht Drive<br>Galion, Ohio 44833<br><br>And<br><br>DOUG LEUTHOLD<br>100 Crossroads Boulevard<br>Bucyrus, Ohio 44820<br><br>Defendants. | ) | CASE NO.<br><br>JUDGE:<br><br>**COMPLAINT FOR DAMAGES AND REINSTATEMENT**<br><br>**JURY DEMAND ENDORSED HEREIN** |

Plaintiff, Skyler Gearheart, by and through undersigned counsel, as his Complaint against the Defendants, states and avers the following:

**PARTIES**

1. Gearheart is a resident of the city of Bucyrus, county of Crawford, state of Ohio.

2. Defendant Advanced Fiber LLC is a resident of the state of Ohio.





3. Advanced Fiber is a foreign limited liability company.

4. Advanced Fiber owns and/or operates a business located in Crawford County at 100 Crossroads Blvd., Bucyrus, Ohio 44820.

5. During all times material to this Complaint, Advanced Fiber was an employer as defined by 29 U.S.C. § 2611(4)(A)(i).

6. During all times material to this Complaint, Advanced Fiber was an employer within the meaning of R.C. § 4112.02.

7. Defendant Don Conkel is a resident of the state of Ohio.

8. Conkel was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at Advanced Fiber who acted directly or indirectly in the interest of Advanced Fiber.

9. Conkel was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.02.

10. Defendant Doug Leuthold is a resident of the state of Ohio.

11. Leuthold was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at Advanced Fiber who acted directly or indirectly in the interest of Advanced Fiber.

12. Leuthold was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.02.

**JURISDICTION & VENUE**

13. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Gearheart is alleging federal law claims under the Family Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq.*







14. This Court has personal jurisdiction over Advanced Fiber because it is a for-profit limited liability company that is registered to conduct business in this District, and at all times material to the allegations contained herein, conducted substantial business in this District and had sufficient minimum contacts within this District.

15. Venue is properly placed in the United States District Court for the Northern District of Ohio, Eastern Division, pursuant to 28 U.S.C.§ 1391, because it is the district court of the district, division, and county within which Advanced Fiber operated and where a substantial part of the events or omissions giving rise to the claim occurred.

16. All or some of the material events in this matter occurred in Crawford County, state of Ohio.

## FACTS

17. Gearheart is a former employee of Advanced Fiber.

18. Advanced Fiber hired Gearheart on or around November 30, 2017.

19. Advanced Fiber was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C § 2611(4).

20. At all times relevant herein, Gearheart was employed by Advanced Fiber or at least 12 months and had at least 1,250 hours of service with Advanced Fiber and therefore was an "eligible employee" under the FMLA, as that term is defined in 29 U.S.C. § 2611(2)(A).

21. During Gearheart's employment with Advanced Fiber, Conkel was Gearheart's supervisor.

22. During Gearheart's employment with Advanceed Fiber, Conkel asked Gearheart to describe the type of underwear worn by Gearheart's significant other ("Conkel Underwear Comment").





23. Gearheart was offended by the Conkel Underwear Comment.

24. The Conkel Underwear Comment was unwelcomed by Gearheart.

25. During Gearheart's employment with Advanceed Fiber, Conkel asked Gearheart if Gearheart's significant other would have sex with Conkel in exchange for $150.00 ("Conkel Prostitution Request").

26. Gearheart refused the Conkel Prostitution Request.

27. Gearheart was offended by the Conkel Prostitution Request.

28. The Conkel Prostitution Request was unwelcomed by Gearheart.

29. Soliciting prostitution while at work is a terminable offense under the Advanced Fiber sexual harassment policy.

30. Sexual harassment is a terminable offense under the Advanced Fiber sexual harassment policy.

31. Independent of other conduct, the Conkel Prostitution Request created a sexually hostile work environment.

32. Independent of other conduct, the Conkel Prostitution Request amounts to extreme and outrageous conduct.

33. Independent of other conduct, the Conkel Prostitution Request was sexual harassment.

34. Independent of other conduct, the Conkel Prostitution Request is utterly intolerable in a civilized society.

35. Soliciting prostitution while at work violates Advanced Fiber's employment policies.

36. Alternatively, soliciting prostitution while at work is permitted by Defendants.





37. During Gearheart's employment with Advanceed Fiber, Conkel asked Gearheart if Gearheart's significant other would have sex with Conkel in exchange for $300.00 ("Conkel Second Prostitution Request").

38. Gearheart refused the Conkel Second Prostitution Request.

39. Gearheart was offended by the Conkel Second Prostitution Request.

40. The Conkel Second Prostitution Request was unwelcomed by Gearheart.

41. Independent of other conduct, the Conkel Second Prostitution Request created a sexually hostile work environment.

42. Independent of other conduct, the Conkel Second Prostitution Request amounts to extreme and outrageous conduct.

43. Independent of other conduct, the Conkel Second Prostitution Request was sexual harassment.

44. Independent of other conduct, the Conkel Second Prostitution Request is utterly intolerable in a civilized society.

45. Collectively the Conkel Prostitution Request and Conkel Second Prostitution Request are referred to as ("Conkel Prostitution Requests").

46. During Gearheart's employment with Advanced Fiber, Conkel asked Gearheart personal questions about his relationship with his significant other including questions about the sleeping patterns of Gearheart and Gearheart's significant other.

47. During Gearheart's employment with Advanced Fiber, Conkel asked Gearheart personal questions about his relationship with his significant other including questions about the sleeping arrangements of Gearheart and Gearheart's significant other.





48. During Gearheart's employment with Advanced Fiber, Conkel harassed Gearheart about having a sexual and/or romantic relationship with Gearheart's significant other.

49. During Gearheart's employment with Advanced Fiber, Conkel made comments to Gearheart indicating that Conkel had been watching Gearheart's house and was familiar with the sleeping arrangements and/or patterns of Gearheart's significant other ("Conkel Stalking Comments").

50. Conkel made the Conkel Stalking Comments when Gearheart's significant other was pregnant with Gearheart's unborn child.

51. Gearheart was frightened by the Conkel Stalking Comments.

52. Gearheart felt threatened by the Conkel Stalking Comments.

53. The Conkel Stalking Comments made Gearheart fear for his safety.

54. The Conkel Stalking Comments made Gearheart fear for the safety of his significant other.

55. The Conkel Stalking Comments made Gearheart fear for the safety of his unborn child.

56. Gearheart asked Conkel not to make comments similar to the Conkel Stalking Comments.

57. Gearheart was offended by the Conkel Stalking Comments.

58. Independent of other conduct, the Conkel Stalking Comments created a sexually hostile work environment.

59. Independent of other conduct, the Conkel Stalking Comments amount to extreme and outrageous conduct.

60. Independent of other conduct, the Conkel Stalking Comments were sexual harassment.

61. Independent of other conduct, the Conkel Stalking Comments are utterly intolerable in a civilized society.

62. The Conkel Stalking Comments violate Advanced Fiber's employment policies.





63. Alternatively, a supervisor making comments indicating that he has been spying on a subordinate employee's personal residence in order to learn the sleeping habits, schedules and arrangements of the subordinate employee and the subordinate employee's significant other does not violate Advanced Fiber's employment policies.

64. After Gearheart asked Conkel not to make comments similar to the Conkel Stalking Comments, Conkel hinted that he planned to attempt to visit Gearheart's significant other while Gearhear was sleeping ("Conkel Uninvited Visit Comment").

65. Gearheart was frightened by the Conkel Uninvited Visit Comment.

66. Gearheart felt threatened by the Conkel Uninvited Visit Comment.

67. The Conkel Uninvited Visit Comment made Gearheart fear for his safety.

68. The Conkel Uninvited Visit Comment made Gearheart fear for the safety of his significant other.

69. The Conkel Uninvited Visit Comment made Gearheart fear for the safety of his unborn child.

70. Gearheart was offended by the Conkel Uninvited Visit Comment.

71. Independent of other conduct, the Conkel Uninvited Visit Comment created a sexually hostile work environment.

72. Independent of other conduct, Conkel Uninvited Visit Comment amount to extreme and outrageous conduct.

73. Independent of other conduct, Conkel Uninvited Visit Comment was sexual harassment.

74. Independent of other conduct, the Conkel Uninvited Visit Comment is utterly intolerable in a civilized society.

75. The Conkel Uninvited Visit Comment violates Advanced Fiber's employment policies.





76. Alternatively, a supervisor making comments indicating that he intends to visit a subordinate employee's personal residence while the subordinate employee is sleeping in order to attempt a sexual encounter with the subordinate employee's significant other does not violate Advanced Fiber's employment policies.

77. On or about March 6, 2019, Gearheart complained to Leuthold about Conkel harassing him, including the Conkel Underwear Comment; the Conkel Prostitution Requests; the Conkel Stalking Comments; and the Conkel Uninvited Visit Comment ("Gearheart Sexual Harassment and Stalking Complaint").

78. Based on Advanced Fiber's policies, the events included in the Gearheart Sexual Harassment and Stalking Complaint were considered to be significant workplace incidents.

79. Defendants have a policy and practice of fully investigating significant workplace incidents.

80. Defendants have a policy and practice of getting written statements from all participants to significant workplace incidents.

81. Defendants have a policy and practice of getting written statements from all witnesses to significant workplace incidents.

82. Defendants violated their policy and practice of fully investigating significant workplace incidents regarding the Gearheart Sexual Harassment and Stalking Complaint.

83. Defendants violated their policy and practice of getting written statements from all participants to significant workplace incidents regarding the Gearheart Sexual Harassment and Stalking Complaint.

84. Defendants violated their policy and practice of getting written statements from all witnesses to significant workplace incidents regarding the Gearheart Sexual Harassment and Stalking Complaint.





85. Defendants' failure to follow their policy and practice of fully investigating significant workplace incidents was an adverse action against Gearheart.

86. Defendants' failure to follow their policy and practice of getting written statements from all participants to significant workplace incidents was an adverse action against Gearheart.

87. Defendants' failure to follow their policy and practice of getting written statements from all witnesses to significant workplace incidents was an adverse action against Gearheart.

88. Advanced Fiber disregarded the Gearheart Sexual Harassment and Stalking Complaint and failed to take any action with respect to the Gearheart Sexual Harassment and Stalking Complaint.

89. Conkel was not given a verbal warning as a result of his harassing and/or stalking remarks to Gearheart.

90. Conkel was not given a written warning as a result of his harassing and/or stalking remarks to Gearheart.

91. Conkel's employment at Advanced Fiber was not suspended as a result of his harassing and/or stalking remarks to Gearheart.

92. Conkel's employment at Advanced Fiber was not terminated as a result of his harassing and/or stalking remarks to Gearheart.

93. After Gearheart made the Gearheart Sexual Harassment and Stalking Complaint, Conkel retaliated against Gearheart by giving him more onerous work assignments.

94. After Gearheart made the Gearheart Sexual Harassment and Stalking Complaint, Conkel retaliated against Gearheart by reducing Gearheart's scheduled hours.

95. After Gearheart made the Gearheart Sexual Harassment and Stalking Complaint, Conkel retaliated against Gearheart by reducing the amount of pay Gearheart received.





96. On or about April 8, 2019, Gearheart requested leave under the FMLA ("Gearheart April 2019 FMLA Request").
97. On or about April 29, 2019 Defendants terminated Gearheart's employment.
98. Defendants terminated Gearheart before the Gearheart April 2019 FMLA Request was approved.
99. Conkel made and/or participated in the decision to terminate Gearheart's employment.
100. Leuthold made and/or participated in the decision to terminate Gearheart's employment.
101. Conkel knew or should have known that Gearheart had requested to use FMLA prior to terminating Gearheart's employment.
102. Leuthold knew or should have known that Gearheart had requested to use FMLA prior to terminating Gearheart's employment.
103. Defendants' purported reason for Gearheart's termination is pretext for unlawful retaliation.
104. On or about April 29, 2019, Gearheart was actually terminated in retaliation for making the Gearheart Sexual Harassment and Stalking Complaint.
105. On or about April 29, 2019, Gearheart was actually terminated in retaliation for making the Gearheart April 2019 FMLA Request.
106. Upon information and belief, Advanced Fiber permitted employees who were similarly-situated to Gearheart to retain their employment despite having disciplinary records that were similar to or worse than Gearheart's.
107. Upon information and belief, Advanced Fiber permitted employees who were similarly-situated to Gearheart to retain their employment despite having attendance records that were similar to or worse than Gearheart's.





108. Defendants' did not proffer a legitimate non-discriminatory reason for terminating Gearheart's employment.

109. As a result of being constantly harassed and insulted during his employment at Advanced Fiber, and being wrongfully terminated from Advanced Fiber, Gearheart has suffered severe emotional distress, anxiety, and depression.

110. The above facts demonstrate that Defendants engaged in a pattern and practice of sex harassment and/or discrimination.

111. The above facts demonstrate that Defendants engaged in a pattern and practice of unlawful retaliation.

112. Defendants terminated Gearheart's employment to avoid providing Gearheart with protected leave under the FMLA.

113. There was a causal connection between the Gearheart Sexual Harassment and Stalking Complaint and Defendants' termination of Gearheart's employment.

114. There was a causal connection between the Gearheart April 2019 FMLA Request and Defendants' termination of Gearheart's employment.

**COUNT I: SEXUAL HARASSMENT IN VIOLATION OF R.C. § 4112.01 *et seq*.**

115. Gearheart restates each and every paragraph of this Complaint as though it were fully restated herein.

116. Gearheart was subjected to unwelcome sexual harassment in the form of being the subject of unwanted sexual comments.

117. Gearheart was subjected to unwelcome sexual harassment in the form of having his significant offer being the subject of unwanted sexual comments.





118. Gearheart was subjected to unwelcome sexual harassment in the form of having his significant offer being the subject of unwanted romantic advances.

119. Gearheart was subjected to unwelcome sexual harassment when his supervisor pressured him to discuss the type of underwear Gearheart's significant other wore.

120. Gearheart was subjected to unwelcome sexual harassment when his supervisor made the Conkel Underwear Comment.

121. Gearheart was subjected to unwelcome sexual harassment when his supervisor offered him money in exchange for his supervisor having sex with Gearheart's significant other.

122. Gearheart was subjected to unwelcome sexual harassment when his supervisor made the Conkel Prostitution Requests.

123. Gearheart was subjected to unwelcome sexual harassment when his supervisor made comments to Gearheart indicating that he had been watching Gearheart's house and was familiar with the sleeping arrangements and/or patterns of Gearheart and Gearheart's significant other.

124. Gearheart was subjected to unwelcome sexual harassment when his supervisor made the Conkel Stalking Comments.

125. Gearheart was subjected to unwelcome sexual harassment when his supervisor made comments to Gearheart indicating that he was going to wait until Gearheart fell asleep then attempt to visit Gearheart's significant other in Gearheart's private residence.

126. Gearheart was subjected to unwelcome sexual harassment when his supervisor made the Conkel Uninvited Visit Comment.

127. A male supervisor making graphic, sexual, obscene, and/or menacing comments about a subordinate employee's significant other violates Defendants' sexual harassment policy.





128. A male supervisor making graphic, sexual, obscene, and/or menacing comments about a subordinate employee's significant other is permitted by Defendants.

129. Conkel's conduct toward Gearheart and Gearheart's significant other created a sexually hostile work environment.

130. As a direct and proximate result of the intimidating, offensive, and hostile environment created and sustained by Defendants, Gearheart reported the sexual harassment to his supervisor.

131. As a direct and proximate result of the intimidating, offensive, and hostile environment created and sustained by Defendants, Gearheart made the Gearheart Sexual Harassment and Stalking Complaint.

132. After Gearheart made the Gearheart Sexual Harassment and Stalking Complaint, Advanced Fiber permitted Conkel to retaliate against Gearheart by cutting his hours.

133. After Gearheart made the Gearheart Sexual Harassment and Stalking Complaint, Advanced Fiber permitted Conkel to retaliate against Gearheart by reducing his pay.

134. After Gearheart made the Gearheart Sexual Harassment and Stalking Complaint, Advanced Fiber permitted Conkel to retaliate against Gearheart by terminating his employment.

135. Defendants' actions amount to discrimination on the basis of sex through the creation of a hostile work environment in violation of R.C. § 4112.01 *et seq*.

136. Conkel's sexual harassment of Gearheart occurred while Gearheart and Conkel were acting in the course and scope of their employment with Advanced Fiber.

137. Defendants had knowledge of Conkel's sexual harassment and failed to take any corrective or remedial action.





138. Gearheart suffered emotional distress as a result of Defendants' conduct and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

139. As a direct and proximate result of Defendants' conduct, Gearheart has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

140. As a direct and proximate result of Defendants' conduct, Gearheart has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT II: RETALIATORY DISCRIMINATION**

141. Gearheart restates each and every prior paragraph of this complaint, as if it were fully restated herein.

142. As a result of the Defendant's discriminatory conduct described above, Gearheart complained about the harassment he was experiencing.

143. As a result of the Defendant's discriminatory conduct described above, Gearheart made the Gearheart Sexual Harassment and Stalking Complaint.

144. Subsequent to Gearheart reporting the sexual harassment to his supervisor and employer, Gearheart's scheduled hours were reduced.

145. Subsequent to Gearheart reporting the sexual harassment to his supervisor and employer, Gearheart's pay was reduced.

146. Subsequent to Gearheart reporting the sexual harassment to his supervisor and employer, Gearheart was terminated.

147. Defendants' actions were retaliatory in nature based on Gearheart's opposition to unlawful discriminatory conduct.





148. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

149. Gearheart suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

150. As a direct and proximate result of Defendants' retaliatory discrimination against and termination of Gearheart, he suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT III: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS**

151. Gearheart restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

152. Pursuant to 29 U.S.C. § 2601 *et seq*., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

153. Advanced Fiber is a covered employer under the FMLA.

154. During his employment, Gearheart qualified for FMLA leave.

155. During his employment, Gearheart attempted to request FMLA leave by asking Defendants if he qualified to take FMLA leave.

156. Defendants failed to properly advise Gearheart of his rights under the FMLA.

157. Defendants unlawfully interfered with Gearheart's exercise of his rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

158. Defendants' act of terminating Gearheart to avoid providing him with FMLA leave violated and interfered with Gearheart 's FMLA rights.





159. Defendants violated section 825.300(c)(1) of the FMLA and interfered with Gearheart 's FMLA rights when Defendants did not honor Gearheart's request for FMLA leave.

160. As a direct and proximate result of Defendants' conduct, Gearheart is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorney's fees.

**COUNT IV: RETALIATION IN VIOLATION OF THE FMLA**

161. Gearheart restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

162. During his employment, Gearheart attempted to utilize FMLA leave.

163. After Gearheart attempted to utilize his qualified FMLA leave, Defendants retaliated against him.

164. Defendants retaliated against Gearheart by reducing his scheduled hours.

165. Defendants retaliated against Gearheart by reducing his pay.

166. Defendants retaliated against Gearheart by terminating his employment.

167. Defendants willfully retaliated against Gearheart in violation of U.S.C. § 2615(a).

168. As a direct and proximate result of Defendants' wrongful conduct, Gearheart is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

**COUNT V: HOSTILE WORK ENVIRONMENT ON THE BASIS OF SEXUAL HARASSMENT**

169. Gearheart restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

170. During his employment with Advanced Fiber, Gearheart was subjected to offensive and harassing conduct by Conkel based on his gender.







171. Defendants knew or should have known of the harassing conduct against Gearheart by Conkel.

172. Defendants condoned, tolerated and ratified this harassing conduct.

173. This harassing conduct was severe and/or pervasive.

174. This harassing conduct was offensive to Gearheart.

175. This harassing conduct interfered with Gearheart's ability to perform his job duties.

176. Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for Gearheart.

177. Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Gearheart.

178. Gearheart suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

**COUNT VI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

179. Gearheart restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

180. Defendants intended to cause Gearheart emotional distress, or knew that their acts or omissions would result in serious emotional distress to Gearheart.

181. Defendants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

182. As a direct and proximate result of Defendants' acts and omissions as set forth above, Gearheart has suffered mental anguish of such a serious nature that no reasonable person could be expected to endure it.





183. As a direct and proximate result of Defendants' conduct and the resulting emotional distress, Gearheart has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Skyler Gearheart demands from Defendants the following:

(a) Issue an order requiring Defendants to restore Gearheart to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Gearheart for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys fees and non-taxable costs for Gearheart's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

_/s/ Andrew D. Pappert _______________
Brian D. Spitz (0068816)
Andrew D. Pappert (0093964)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: drew.pappert@spitzlawfirm.com
brian.spitz@spitzlawfirm.com

*Attorney(s) For Plaintiff Skyler Gearheart*





**JURY DEMAND**

Plaintiff Skyler Gearheart demands a trial by jury by the maximum number of jurors permitted.

/s/ Andrew D. Pappert
Brian D. Spitz (0068816)
Andrew D. Pappert (0093964)





